UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARLOW PALMORE,

                Plaintiff,

v.                                        Case No. 15-cv-575-pp

SHERINE MEEKS and
KIMBERLEE DANCE,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANTS MEEKS AND DANCE (DKT. NO. 50) AND DISMISSING CASE**

        The plaintiff filed his complaint on May 12, 2015. Dkt. No. 1. On October 14, 2015, he notified the court that he'd identified some of the "John/Jane Doe" defendants he'd sued, and asked to file an amended complaint adding (among others) defendants Sherine Meeks and Kimberly Dance (nurses at Racine Correctional Institution). Dkt. Nos. 17, 17-1. The court granted that motion. Dkt. No. 20. Although the plaintiff served his amended complaint on Dance on June 30, 2016, dkt. no. 26, and on Meeks on July 1, 2016, dkt. no. 28, neither defendant ever has appeared or answered. On February 16, 2017, the plaintiff—representing himself—filed a motion for default judgment against these two defendants, asserting that "[a] default ha[d] been entered." Dkt. No. 43. That wasn't accurate. The clerk had not entered default, but on July 5, 2017, the court issued an order asking the clerk to do so, and the clerk entered default that day. Dkt. No. 46 at 3. Noting that trying to prove up a motion for

default *judgment* was not a straightforward process, the court indicated that it would recruit a lawyer to help the plaintiff prepare such a motion. Id. at 2-3. On July 20, 2018, the plaintiff—through counsel—filed a motion for default judgment. Dkt. No. 50. The defendants still have not responded or appeared. The court will grant the motion.

**I.     Default Judgment Procedure**

Federal Rule of Civil Procedure 55 lays out a two-step process for a plaintiff to follow to obtain a judgment against a defendant who has not responded to the lawsuit. First, the plaintiff must ask the clerk to enter default, based on the opposing party's failure to plead. Fed. R. Civ. P. 55(a). Second, after the clerk has entered default, a plaintiff may move for default judgment under Rule 55(b). In considering a motion for default judgment, the court accepts as true the well-pleaded factual allegations in the complaint. eE360 Insight v. The Spamhaus Project, 500 F.3d 594, 602 (7th Cir. 2007). "A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint." Id. The plaintiff, however, must prove those portions of the default judgment motion relating to the amount of damages and fees the plaintiff seeks. Yang v. Hardin, 37 F.3d 282, 286 (7th Cir. 1994). Rule 55(b)(2) provides that the district court may conduct hearings or make referrals, if necessary, to determine the amount of damages. Such proceedings are unnecessary if the "amount claimed is liquidated or capable of ascertainment from definite figures contained in the

documentary evidence or in detailed affidavits." eE360 Insight, 500 F.3d at 602 (quoting Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc., 722 F.2d 1319, 1323 (7th Cir. 1983)).

## II.  Analysis

The court construed the plaintiff's February 16, 2017 request, dkt. no. 43, as a motion for entry of default and directed the clerk to enter default on July 5, 2017, dkt. no. 46. The clerk did so. That means that the only issues for the court to consider are whether the well-pleaded allegations in the complaint establish that the defendants are liable under the law, and whether the plaintiff has proven up his requested damages.

The Wisconsin Inmate Locator Service shows that between January 2005 and December 3, 2009, the plaintiff was incarcerated at Fox Lake Correctional Institution; he was at Racine Correctional Institution from December 3, 2009 to August 30 of this year. https://appsdoc.wi.gov.lop/detail.do (last visited September 26, 2018).

The amended complaint alleged that at both Fox Lake and Racine, the plaintiff was diagnosed with osteoarthritis; it stated that between August 14, 2009 and October 2015, doctors had prescribed him pain medications and creams. Dkt. No. 22 at 3. The plaintiff alleged, however, that between December 2014 and February 23, 2015, he didn't get any pain medication, despite the fact that he made numerous requests. Id. at 3. The complaint investigator at Racine Correctional found that plaintiff had followed proper

3

procedure for obtaining his medication, and that health services had made several requests to Central Pharmacy for the medication. Id. The investigator found that medical staff had mishandled the medication once it did arrive, which caused more delay in the plaintiff receiving the medication. Id. at 4. Defendants Meeks and Dance worked as LPNs (licensed practical nurses) at Racine Correctional; the plaintiff alleged that they filled the requested medications. Id. at 5. He alleged that because their duties were to fill prescriptions, Meeks and Dance "could have been involved in the intentional delay and mishandling of the pain medication prescribed for the plaintiff." Id.

The plaintiff also provided more information about Meeks and Dance in the affidavit he filed in support of his motion for default judgment. Dkt. No. 50-1. The affidavit states that in discovery he learned Meeks and Dance both were employed at the Central Pharmacy at the Racine Correctional Institution during the time that he asked for, but failed to receive, his medication. Id. at ¶3.

The plaintiff attached to his affidavit several medication/medical supply refill requests. The first one, completed by the plaintiff on January 1, 2015, asked for Meloxicam (a non-steroid anti-inflammatory); it was received on January 2, 2015, with the initials "SM," and marked, "Ordered; will send when received." Id. at 4. The second one, dated by the plaintiff January 11, 2015, asked again for Meloxicam, as well as "ergaocalciferol" (a dietary supplement) and "trixaicin crème" (a topical pain reliever). Id. at 5. This form was received

4

by HSU staff on January 12, 2015; it bears the initials "SM." Id. It indicates that the Meloxicam had been "Ordered; will send when received," and that the other two medications had been "dispensed." Id.

The plaintiff filled out another request on January 19, 2015, again requesting the Meloxicam. Id. at 6. There is no "received" stamp on this request, but the initials "SM" appear at the bottom, and the "Date Returned to Patient" date is January 19, 2015; this form again indicates that the Meloxicam had been ordered, and would be sent when it was received. Id.

On January 27, 2015, the plaintiff completed yet another request for Meloxicam. Id. at 7. This one was received January 27, 2015; the initials appear to be "KD," and it again indicates that the medication had been ordered, and would be sent when received. Id.

The plaintiff dated his fifth request February 4, 2015, and requested all three medications—the Meloxicam, the ergocalciferol and the trixaicin cream. Id. at 8. This request was received on February 5, 2015; it appears to bear the initials "KD," and says that the HSU dispensed the vitamin supplement and the topical cream, but that the Meloxicam had been ordered and would be sent when it was received. Id.

On February 13, 2015, the plaintiff completed a sixth request. Id. at 9. This one appears to have been received on February 14, 2015; it bears the initials "KD." Id. There is an "X" next to the box that says that the Meloxicam

had been ordered, and would be sent when received, but there is also something illegible written into the box next to the word "Dispensed." Id.

The plaintiff completed his seventh request for Meloxicam on February 23, 2015; it was received on February 23, 2015. Id. at 10. This one says that the Meloxicam had been "Dispensed," and it bears a different signature than the other requests. Id. There are three subsequent requests, bearing different initials, dated March 17, April 15, and April 23, 2015. Id. at 11-13.

The plaintiff also attached the defendants' responses to his requests for production of documents. Id. at 14-17. The defendants' response to request number 4 shows that between December 2014 and February of 2015, the Central Pharmacy filled four prescriptions for Meloxicam for the plaintiff. Id. at 15-16. On December 10, 2014, Jim Kronenberg filled one prescription; on January 8, 2015, Gregory Heberlein filled one of those prescriptions; on February 2, 2015, Daryl Daane filled another; on February 20, 2015, Jim Kronenberg filled the fourth. Id.

The complaint, which the court must accept as true, alleges that between December 2014 and February 23, 2015, the plaintiff did not receive any pain medication. The discovery shows that Meeks signed three forms indicating that the Meloxicam had been "ordered," and that the HSU would send it when it was received, but the pharmacy had filled one prescription on December 10, 2014 (three weeks before the plaintiff filed the first request) and another on January 8, 2015 (three days before the plaintiff's second request,

and eleven days before his third). The discovery shows that Dance signed three forms, indicating that the Meloxicam had been "ordered" and would be delivered when it was received, but the pharmacy had filled a prescription on February 2, 2015 (two days before the plaintiff's fifth request, and eleven days before his sixth request). In short, the plaintiff's evidence demonstrates that although the pharmacy was filling the plaintiff's prescriptions for Meloxicam, Meeks and Dance were telling him that the medication was on order but hadn't been received yet.[1]

     A plaintiff states a claim for deliberate indifference under the Eighth Amendment if he alleges that (1) the harm to the plaintiff was objectively serious, and (2) the official was deliberately indifferent to his health or safety. Arnett v. Webster, 658 F.3d 742, 750 (7th Cir. 2011) (citing Johnson v. Snyder, 444 F.3d 579, 584 (7th Cir. 2006)). The court concludes that osteoarthritis pain is an objectively serious medical condition. The court also finds, construing the allegations in the complaint and affidavit in the plaintiff's favor (as the court must), that Meeks's and Dance's failure to deliver the prescribed Meloxicam to the plaintiff demonstrates they were deliberately

---

[1] The plaintiff says in the complaint that he did not receive "any" medication for his arthritis pain during this time. The responses to the plaintiff's requests for production do not mention the vitamin supplement or the topical pain relief cream. Both Meeks and Dance indicated on the forms that these medications had been "dispensed." It is possible that the plaintiff did not get these medications, either, but whether he did or didn't, he has sufficiently supported his claim that Meeks and Dance were partially responsible for the fact that he did not receive the Meloxicam, which is enough to support his default judgment motion.

indifferent to that serious medical condition. The plaintiff has shown sufficient facts to support the conclusion that Meeks and Dance knew of facts from which they could infer that there was a substantial risk that the plaintiff was in pain (his repeated medication requests), and that they disregarded that risk (by failing to deliver the prescribed medications to him for an extended period). See Whiting v. Wexford Health Sources, Inc., 839 F.3d 658, 662 (7th Cir. 2016) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994); Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016)). "[T]urning a blind eye to a prisoner's complaints of readily treatable pain can constitute an Eighth Amendment violation, even if the condition is not life-threatening and the failure to treat does not exacerbate the condition." Diaz v. Godinez, 693 Fed. App'x 440, 443 (7th Cir. 2017) (citing Gomez v. Randle, 680 F.3d 859, 865 (7th Cir. 2012)).

As to damages, the plaintiff has asked the court to award him $5,000 against Meeks and Dance, to compensate him "for the extreme pain and suffering that [he] experienced in 2014 and 2015." Dkt. No. 50-1 at 3. The plaintiff has alleged that due in part to Meeks' and Dance's deliberate indifference, he was in pain for over sixty days from his documented, unmedicated osteoarthritis. He has not presented evidence in support of this claim—he has not presented an affidavit of a pain specialist, for example. But in a case where the defendants have not responded or defended, and where the plaintiff does not have the funds to hire an expert, this is understandable.

In Tate v. Troutman, 683 F. Supp. 2d 897, 911 (E.D. Wis. 2010), Judge Rudolph T. Randa awarded an inmate damages for pain and suffering he experienced over a month due to lack of an adequate diagnosis and treatment of a shoulder injury. Judge Randa came to this conclusion after looking at other cases involving low back pain. The Seventh Circuit has observed, however, that while courts may "compare the award with other compensatory damages awards upheld in similar cases," such comparisons "are rarely dispositive given the fact-specific nature of damages claims." Hendrickson v. Cooper, 589 F.3d 887, 892 (7th Cir. 2009) (citation omitted). The court said, "The required 'rational connection' between the evidence and the award does not imply mathematical exactitude, especially where the compensatory damages are for pain and suffering." Id. The court noted that damages for pain and suffering "are very difficult to quantify," and said that in jury cases, it is up to the jury to "select a dollar amount that it believes will fairly compensate the plaintiff." Id. (citing Fenolio v. Smith, 802 F.2d 256, 259-60 (7th Cir. 1986)).

There is no jury here; it is up to the court to decide whether the plaintiff's request of compensatory damages of $5,000 is "rationally connected" to the pain he suffered for two months because of the defendants' failure to get his medication to him. The court concludes that it is. It would have been easy to provide the plaintiff with relief—he had a prescription and the pharmacy was filling it. All the defendants had to do to avoid his unnecessary pain was

to get the medicine to the plaintiff. They knew he hadn't received it—he asked for it every few days. The court concludes that $5,000 is a reasonable amount to compensate the plaintiff for his unnecessary suffering.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for default judgment against defendants Sherine Meeks and Kimberlee Dance. Dkt. No. 50.

The court **AWARDS** the plaintiff $5,000.00 to compensate him for the pain and suffering he experienced due to the delay in receiving his pain medications. All sums awarded bear post-judgment interest at the applicable rate. The clerk shall enter judgment accordingly.

The court **ORDERS** that upon entry of judgment, the case is **DISMISSED**.

Dated in Milwaukee, Wisconsin this 27th day of September, 2018.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **United States District Judge**